UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LOUIS V. STADLER and
PATRICIA A. STADLER,

                                 Plaintiffs,

v.

JOHN HANCOCK LIFE INSURANCE
COMPANY (USA),

                                 Defendant.

Case No. 13-CV-679-JPS

ORDER

---

      The plaintiffs, Louis Stadler and Patricia Stadler (collectively, "the Stadlers"), filed this suit in Waukesha County Circuit Court. (Docket #1, Ex. B). In it, they allege various fraud and misrepresentations claims against the defendant, John Hancock Life Insurance Company (USA) ("John Hancock"), stemming from certain false statements that one of John Hancock's agents allegedly made to them to induce them to buy life insurance. (Docket #1, Ex. B). John Hancock removed the case from Waukesha County on the basis of diversity jurisdiction, which exists in this case because the parties are citizens of different states and the Stadlers seek recovery in excess of $75,000.00. (Docket #1). After removing the case to this Court, John Hancock moved to dismiss all of the Stadlers' claims. (Docket #3). The parties briefed the matter (Docket #4, #14, #18), and the Court now turns to address it.

1.     BACKGROUND

      The Court begins by discussing the background of this case. As it must at this stage of the proceedings, the Court will treat all of the Stadlers' well-pleaded allegations of fact as true.

The Stadlers are an elderly couple who live in Menomonee Falls, Wisconsin. (Compl. ¶ 1; Docket #14, at 1). They are now in their late seventies and have a significant net worth. (Docket #4, Ex. 1, at 25).[1] In fact, Mr. Stadler was a banker before he retired. (Docket #18, Ex. 1, at 1).

In April of 2008, they met with Jeffrey Stadelmann, an insurance agent, in hopes of purchasing a life insurance policy that would benefit a trust for their grandchildren, with their son named as trustee. (Compl. ¶¶ 4, 6, 7). They subsequently filled out an application for that policy and filed the application with John Hancock. (Compl. ¶ 8).

John Hancock approved the application and issued the policy on June 13, 2008. (Compl. ¶ 11). The face value of the policy was $7,500,000.00. (Compl. ¶ 9).

The Stadlers made several premium payments on the policy. (Compl. ¶ 12). Specifically, they paid $83,000.00 on June 12, 2008; $9,300.00 on August 29, 2008; $25,000.00 on September 19, 2008; and $86,000.00 on October 10, 2008. (Compl. ¶ 12). Those amounts totaled $203,000.00.

However, after paying those amounts, the Stadlers stopped making payments on the policy, allegedly at the direction of Stadelmann. (Compl. ¶ 13). Several months later, in September of 2010, John Hancock threatened to terminate the policy due to the Stadlers' failure to pay the required policy premiums. (Compl. ¶ 14).

---

[1] The Court refers to several portions of the Stadlers' life insurance policy, application, and re-application, in order to elicit certain facts. This is permissible, because each of those documents is referred to in the complaint (*see* Compl., at ¶¶ 8, 11, 23). *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (*citing Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

The Stadlers were perplexed, because allegedly Stadelmann had told them that the $203,300.00 amount they paid would be sufficient, up front, to pay for the entire $7,500,000.00 policy. (Compl. ¶ 10). In other words, the Stadlers assert that Stadelmann misrepresented that an up-front payment of $203,300.00 would cover the premiums on the $7,500,000.00 in coverage for the life of the policy. (Compl. ¶ 10).

Without passing on the veracity of those assertions, the Court must make two important points. First, Stadelmann ultimately faced federal criminal charges in this district, which stemmed from similarly dishonest activities. (Case No. 09-CR-280). He pled guilty to those charges and received a lengthy prison sentence. (Case No. 09-CR-280, Docket #18, #27). Second, the return on the Stadlers' $203,300.00 investment seems too good to be true. Assuming that the Stadlers lived for 50 years after receiving the policy (at which time they would be well into their 120s), then their rate of return would be almost 7.5% compounded annually with no apparent risk. That, itself, is a remarkably good rate in this day and age. And, of course, the less time that passed between issuance of the policy and their death, the higher the rate of return: a period of 40 years results in a rate closer to 10%; a period of 30 years results in a rate of over 12.5%; and a period of 20 years results in a rate near to 20%. The Court points these factors out, because they each weigh on one side of the balance on the Stadlers' assertions regarding Stadelmann's representations to them and their reliance thereon. As the Court has noted, it takes the plaintiffs' assertions to be true at this stage of the proceedings. It is nonetheless important to point out both the strengths and weaknesses inherent in those assertions at this early stage.

Thus, the Stadlers chose not to pay any further premiums and the policy lapsed. (Compl. ¶ 15).

Mr. Stadler was not pleased with this turn of events and spoke with a John Hancock customer relations representative in February of 2011. (Compl. ¶ 16). At that time, he told the representative of Stadelmann's misrepresentation and demanded that John Hancock treat the $7,500,000.00 policy as effective and paid in full. (Compl. ¶ 16). In the alternative, Mr. Stadler requested that John Hancock reduce the face amount of the policy retroactively, such that the $203,300.00 amount that he and Ms. Stadler had already paid could be credited to additional policy periods in the future. (Compl. ¶ 16). In other words, Mr. Stadler requested that the face value of the policy be lowered so that the Stadlers would receive a smaller payout on their death; that reduction in value would then trigger lower premium amounts; Mr. Stadler wanted John Hancock to deem those lower premium amounts to have been in effect since the issuance of the policy; and, with those lower premiums in effect, the $203,300.00 that the Stadlers had already paid would cover a longer period of time. (Compl. ¶ 16).

John Hancock refused to acquiesce to either of Mr. Stadler's requests. (Compl. ¶ 17; Compl. Ex. D). Of course, had John Hancock offered to treat the policy as having been paid in full, then the company would suffer substantial pecuniary loss, absent the Stadlers living to an exceptionally old age (which is extremely unlikely). As to the requested reduction in the policy amount, John Hancock informed Mr. Stadler that the company would "consider a request for reduction in the amount of insurance only as of a current date not back to the original issue date of the policy and only after the policy has been reinstated." (Compl. Ex. D). This, too, is a reasonable

position on John Hancock's part. In effect, the Stadlers had received several years' worth of insurance coverage in the face amount of $7,500,000.00. Had the unfortunate occurred and the Stadlers died during that period, John Hancock would have been required to pay out the entire $7,500,000.00 amount. Thus, arguably, the Stadlers received the benefit of several years of high dollar value coverage. The fact that they ultimately did not take advantage of that coverage (by the fortunate circumstance of surviving through the period) does not detract from the value they received during that time period.[2] John Hancock also required the Stadlers to re-apply for coverage before it would consider allowing them to reduce their policy amount on a going-forward basis, seeing as they had previously allowed their policy to lapse. (Compl. Ex. D).

Even with Mr. Stadler's requests denied, the Stadlers nonetheless chose to re-apply for life insurance. (Compl. ¶ 18). They filed a re-application on March 15, 2011, which John Hancock denied on June 3, 2011. (Compl. ¶¶ 18–19). In support of this denial, John Hancock pointed to a recent suggestion by one of Mr. Stadler's physicians that he receive a CT scan of his lung. (Compl. ¶ 19). Mr. Stadler received that scan, which was negative, and informed John Hancock of that fact; John Hancock did not respond for approximately three months and then requested that the Stadlers complete yet another application. (Compl. ¶¶ 20, 22). The Stadlers completed this

---

[2]The Stadlers would, of course, disagree. They would undoubtedly argue that they believed their $203,300.00 up-front payment would go a much longer way toward paying the entirety of the premiums due, and thus they did not receive $203,300.00 worth of benefit on the terms as they allegedly negotiated them. The Court's discussion on this point is simply to clarify John Hancock's position.

second re-application, which John Hancock considered for more than three months before denying it based upon reports from one of Mrs. Stadler's doctors. (Compl. ¶¶ 23, 26). In denying the second re-application, John Hancock offered to consider an application from the Stadlers for a new policy of insurance at a different premium amount and rate. (Compl. Ex. K).

The Stadlers, predictably, declined. Instead, they filed the action at hand in Waukesha County Circuit Court. (Docket #1). John Hancock removed the matter to this Court based on diversity jurisdiction, and the matter is now before the Court on John Hancock's motion to dismiss.

2.  DISCUSSION

The Stadlers' complaint alleges four causes of action against John Hancock: fraud (Compl. ¶¶ 30–38); intentional misrepresentation (Compl. ¶¶ 39–46); agency (Compl. ¶¶ 47–51); and rescission of contract and unjust enrichment (Compl. ¶¶ 52–57). John Hancock moved to dismiss each of those claims, which prompted the Stadlers to shift tactics and assert that their claims (though it is unclear *exactly* which ones) actually arise under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 ("DTPA" or "§ 100.18"). (*E.g.* Docket # 14, at 7). This new theory comes late and is not supported by the Stadlers' complaint. The Court will nonetheless address it prior to addressing the remaining theories of liability that the Stadlers included in their complaint and which John Hancock has moved to dismiss.

The Court should not dismiss the Stadlers' complaint so long as it "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557 (2007)).

Page 6 of 19

Case 2:13-cv-00679-JPS   Filed 10/28/13   Page 6 of 19   Document 19

### 2.1. Wisconsin Deceptive Trade Practice Act Claim

The Court begins by discussing the Stadlers' newly-alleged claim under the DTPA. The DTPA provides citizens with a private right of action when they suffer a pecuniary loss as a result of false or fraudulent advertising. *See* Wis. Stat. § 100.18.

This claim does not appear anywhere within the Stadlers' complaint. Instead, the Stadlers' asserted claims all appear to be common law claims, seeing as none of them reference any statute, including the DTPA. (*See* Compl.). On that basis, the Court believes that the Stadlers likely have waived these claims.

However, the Stadlers argue that they did not need to reference the statute in the Complaint, and the Court can thus read these claims into their pleadings. (Docket #14, at 7 (citing *Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir.); *Jogi v. Voges*, 480 F.3d 822, 826 (7th Cir. 2007); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992))). The Court has doubts about that assertion, seeing as nothing in the Complaint could be read even to provide notice to John Hancock that the Stadlers were asserting DTPA claims. In the Court's view, this is little more than a last-ditch attempt to dodge the reliance requirement that forms a significant part of the Stadlers' common law claims, which the Court will discuss further, below.

It is also worthy to note that the Stadlers have failed to provide the Court with any specific indication of which of its claims should be read as DTPA claims. Apparently, in "identifying the DTPA, Wis. Stat. § 100.18, as one legal theory that supports [the Stadlers'] claim, [the Stadlers] do not suggest that they are limiting themselves to this theory. The Complaint

supports other common law and statutory tort theories that will also be pursued." (Docket #14, at 8 n. 1). That statement perfectly encapsulates the Stadlers' have-their-cake-and-eat-it-too approach to their claims. They initially alleged four causes of action, but now they ask the Court to read in a fifth that also allegedly serves as an alternate theory for an (unspecified) amount on those four claims. This is dubious practice and certainly borders on failing to give fair notice to John Hancock of the claims against it.

Ultimately, though, even turning a blind eye to those myriad problems, the DTPA claims still fail and the Court can dispose of them in short order. The text of the statute makes clear that it "does not apply to the insurance business." Wis. Stat. § 100.18(12)(a). Thus, under the express terms of the statute, the Stadlers' asserted DTPA claims outright fail and the Court need not consider them further.[3] Accordingly there is no legal merit to these claims and the Court must dismiss them. To the extent that the Stadlers' complaint may be read to actually assert these claims, the Court grants John Hancock's motion to dismiss those claims.

    2.2    Fraud and Intentional Misrepresentation Claims

One potential reason for the Stadlers' failure to differentiate the DTPA claims from the remaining common law claims could be that the Stadlers' attorney intended the DTPA claim to fall under the alleged fraud count, found in paragraphs thirty through thirty-eight. This may be the case, seeing as the Stadlers have alleged that fraud count in addition to an intentional

---

[3]This also does not mention the fact that the Stadlers' claims—even if viable under the DPTA against an insurance representative—are barred by the statute's limitations period, because the alleged misrepresentation occurred more than three years before they filed their complaint.

misrepresentation count (Compl. ¶¶ 39–46), despite the fact that intentional misrepresentation is essentially the same claim as common-law fraud, *see Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111 ¶ 12, 283 Wis. 2d 555, 699 N.W.2d 205 ("intentional misrepresentation, sometimes referred to as fraudulent misrepresentation…or common-law fraud") (internal citations omitted).

Assuming that the alleged fraud claim is actually a DTPA claim, then the Court has already dismissed the claim for the reasons discussed above. On the other hand, if the Stadlers intended the claim to allege a common-law fraud claim, then the Court can identify no substantive difference between it and Count Two, alleging intentional misrepresentation.[4] In this latter case, the Court will collapse the two claims and treat them as one. The Court will refer to this claim from this point on as the intentional misrepresentation claim.

---

[4]The Court can also envision the Stadlers arguing that their fraud claim should be construed as alleging fraud in the inducement. If that is the case, then the Court's analysis remains unchanged, because claims for fraud in the inducement and intentional misrepresentation both contain the same elements. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 766 (citing *Kaloti*, 2005 WI 111 at ¶ 12). Both also include a requirement that the plaintiff's reliance on any alleged misrepresentation be reliable. *See Metavante*, 619 F.3d at 767 (*citing Hennig v. Ahearn*, 230 Wis. 2d 149, 601 N.W.2d 14, 26 (1999) for proposition that reasonable reliance is required to succeed on a fraudulent inducement claim)); *Kailin v. Armstrong*, 2002 WI App 70 ¶ 31, 252 Wis. 2d 676, 643 N.W.2d 132 (reasonable reliance is part of an intentional misrepresentation claim). Given the similarities between these two claims, the Court believes that, even if the Stadlers intended them to be considered separate—which, given the lack of clarity in their Complaint and brief, the Court cannot be sure of—they may still be analyzed jointly.

Under Wisconsin law, the elements of an intentional misrepresentation claim are:

> (1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment.

*Kaloti*, 2005 WI 111 at ¶ 12 (*citing Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 13, 270 Wis.2d 146, 677 N.W.2d 233; *Ramsden v. Farm Credit Services of North Central Wisconsin ACA*, 223 Wis. 2d 704, 718 n. 9, 590 N.W.2d 1 (Ct. App. 1998)). The Stadlers' reliance on that misrepresentation must also, however, have been reasonable. *Kailin v. Armstrong*, 2002 WI App 70 ¶ 31, 252 Wis. 2d 676, 643 N.W.2d 132.

The real issue at this juncture is whether the Stadlers' reliance on Stadelmann's alleged misrepresentations was reasonable.

The parties largely avoid discussing the elements of the intentional misrepresentation claim. And rightly so, as the Stadlers' factual allegations on that front are practically unassailable at this stage of the proceedings. The Court notes that the heightened pleading standards under Federal Rule of Civil Procedure 9(b), because these claims "sound[] in fraud." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Even with those heightened pleading standards, the Stadlers' complaint survives, because they alleged with very specific particularity the precise dates and times that the alleged misrepresentations were made to them. The Court takes all of their allegations to be true, and

those allegations make out all of the elements of an intentional misrepresentation claim.

The allegations do not, however, establish that the Stadlers reasonably relied on Stadelmann's alleged misrepresentations. Ordinarily, the question of reasonable reliance is one of fact best left for summary judgment or a jury. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 766–67 (7th Cir. 2010) (citing *Sciano v. Hengle*, 1 Wis. 2d 273, 83 N.W.2d 689, 692 (1957)). However, in certain cases, such as where the relevant facts are undisputed, it may be a question of law. *Ritchie v. Clappier*, 109 Wis. 2d 399, 406, 326 N.W.2d 131, 134 (1982) (*citing Williams v. Rank & Son Buick, Inc.*, 44 Wis. 2d 239, 246, 170 N.W.2d 807, 810–11 (1969)). In such a case, the Court must consider "[a]ll the facts and circumstances, 'including the intelligence and experience of the misled individual and the relationship between the parties,'" to determine "whether the plaintiff had the right to rely on the representations." *Metavante*, 619 F.3d at 767–68 (*quoting Bank of sun Prairie v. Esser*, 155 Wis. 2d 724, 456 N.W.2d 585, 589 (1990)); *also citing Hennig*, 601 N.W.2d at 25 n.3). The Court should "refuse to act for the relief of one claiming to have been misled by another's statements who blindly acts in disregard…of their falsity…with such opportunity that by the exercise of ordinary observation, not necessarily by search, he would have known." *Ritchie*, 326 N.W.2d at 134. "Whether the falsity of a statement could have been discovered through ordinary care," as is described in the statement from the *Ritchie* court, above, "is to be determined in light of the intelligence and experience of the misled individual," with consideration also paid to the relationship between the parties. *Williams*, 170 N.W.2d at 810–11.

Case 2:13-cv-00679-JPS   Filed 10/28/13   Page 11 of 19   Document 19

Clearly, given the express and clear terms of the policy, the Stadlers' reliance on Stadelmann's alleged misrepresentations were not reasonable. The Court accepts the Stadlers' alleged facts as entirely true, and thus there is no factual dispute. Thus, the Court can resolve this question as a matter of law. Doing so, it determines that it must dismiss this claim.

The best case scenario for the Stadlers is that they failed to read the life insurance policy when they received it, relying on Stadelmann's oral representations to them, and therefore lacked knowledge that they would be required to pay premiums above and beyond the initial $203,300.00 payments, as the policy's terms clearly required. However, even in that case, the Stadlers failed to take ordinary care and the Court must refuse to act on their behalf because they could have—indeed should have—discovered that Stadelmann's alleged misrepresentations were incorrect. *See, e.g.*, *Ritchie*, 326 N.W.2d at 134; *Williams*, 170 N.W.2d at 810–11. To begin, the policy, itself, is exceedingly clear on its face: its first section, entitled "Policy Specifications," makes clear that the "Planned Premium" is "$180,000.00 for year 1…; $100,000.00 for year 2…; $75,000.00 for years 3–10; [and]…$65,000.00 thereafter." (Docket #4, Ex. 1, at 4). This is on the first substantive page of the contract. It does not require extensive searching. A simple once-over of the contract would have revealed this basic term. Moreover, the contract called for the Stadlers to do more than give the contract a once-over: it specifically told them in all capital letters to "READ YOUR POLICY CAREFULLY." (Docket #4, Ex. 1, at 2). The Court believes that these circumstances would be sufficient to make practically any person's reliance unreasonable.

But the Stadlers are not ordinary people and these are not ordinary circumstances. To begin, the Stadlers are both extremely well-educated and

high net-worth individuals. More specifically, Mr. Stadler is a former banker, in which role he would be very familiar with both interest rates and contracts. Given the absurdly generous terms that he alleges he legitimately believed, the Court cannot fathom why he would not read the contract if for no other reason than to ensure that the terms were genuinely as good as represented to him. But even beyond that, this was an extremely high-dollar insurance policy. Given the Stadlers' high level of education, the too-good-to-be-true terms of the policy, and the fact that the policy was for a very high dollar amount, their alleged failure to read the contract cannot excuse their conduct. Simply put, the Stadlers had an ample opportunity to read the contract and, in the best case scenario, passed upon that opportunity.

The other scenario is that the Stadlers read the contract and either did not read the terms closely enough, failed to understand the terms, or *did* understand the terms but now seek to escape them. In any of those three situations, the Stadlers' alleged reliance on Stadelmann's representations clearly cannot be viewed as reasonable. *See, e.g.*, *Ritchie*, 326 N.W.2d at 134; *Williams*, 170 N.W.2d at 810–11.

Thus, under any of the above-discussed facts, the Stadlers' reliance on Stadelmann's alleged misrepresentations could not be reasonable. The Court should not now act on their behalf and allow them to seek relief when their reliance was entirely unreasonable, under any set of facts.

The Court will, therefore, grant John Hancock's motion to dismiss the Stadlers' fraud and intentional misrepresentations claims.

Page 13 of 19

Case 2:13-cv-00679-JPS   Filed 10/28/13   Page 13 of 19   Document 19

### 2.3 Unjust Enrichment Claim

The Court next turns to the count that the Stadlers listed fourth: "Rescission of Contract and Unjust Enrichment." (Compl. ¶¶ 52–57). The Court begins this discussion by pointing out that rescission of a contract is not a claim in itself, but is instead a remedy that would be available to the Stadlers if they were to prevail on their substantive claims. The Court, therefore, need not address that issue and will turn to the Stadlers' unjust enrichment claim.[5]

In Wisconsin, unjust enrichment is a legal cause of action founded on "'the moral principle that one who has received a benefit has a duty to make restitution where retaining such benefit would be unjust.'" *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (quoting *Watts v. Watts*, 137 Wis. 2d 506, 405 N.W.2d 303, 313 (1987)). The Stadlers must prove three elements to prevail on their unjust enrichment claim: *first*, that they conferred a benefit on John Hancock; *second*, that John Hancock appreciated that benefit; and, *third*, that John Hancock accepted and retained the benefit "'under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.'" *Lindquist*, 557 F.3d at 477 (*quoting Seegers v. Sprague*, 70 Wis. 2d 997, 236 N.W.2d 227, 230 (1975); *citing Ramsey v. Ellis*, 168 Wis. 2d 779, 484 N.W.2d 331, 333 (1992)). However, it is only in the absence of a governing contract that the plaintiff may recover under the theory of

---

[5]Having already found that the DTPA and fraud claims fail, and now further finding that the Stadlers' unjust enrichment claims fail, the Court will not address the issue of rescission, because that is a question of remedy. With every substantive claim dismissed, the Stadlers are not entitled to a remedy, and therefore the Court need not address the issue of a rescission.

unjust enrichment. *See, e.g.*, *Lindquist*, 557 F.3d at 476 (citing *Watts v. Watts,* 137 Wis.2d 506, 405 N.W.2d 303, 313 (1987); *Arjay Inv. Co. v. Kohlmetz,* 9 Wis.2d 535, 101 N.W.2d 700, 702 (1960)); *Beer Capitol Distrib., Inc. v. Guinness Bass Import Co.,* 290 F.3d 877, 881 (7th Cir.2002) ("unjust enrichment is an obligation enforced in the absence of any agreement") (citing *Puttkammer v. Minth,* 83 Wis.2d 686, 266 N.W.2d 361).

This latter point is sufficient to justify dismissal of this action. Here, there was a contract, specifically the insurance between the parties, that governed the relationship of the parties, and therefore it would be inappropriate to resort to the quasi-contractual theory of unjust enrichment to award damages to the Stadlers. *See, e.g.*, *Lindquist*, 557 F.3d at 476; *Beer Capitol,* 290 F.3d at 881. The Stadlers argue that, because they are not technically parties to the contract (rather, their son is beneficiary), this bar should not apply. The Court disagrees. There was clearly an agreement operating between the parties in this case, which governed specific obligations of the parties, such as the Stadlers' premium payments and John Hancock's obligation to pay out the policy value at the time of death.

However, even if the contract bar does not apply, unjust enrichment still is not available to the Stadlers because they cannot satisfy the third element of an unjust enrichment claim. The Court will assume, *arguendo,* that the Stadlers have alleged sufficient facts to satisfy the first two elements. Even so, the facts as alleged could not possibly satisfy the third element. That third element "involves the exercise of the court's discretion insofar as the court must decide what is equitable." *Am. Fed'n of State, Mun. & Cty. Employees v. Wisconsin Law Enforcement Ass'n,* 2008 WI App 51, ¶ 30, 309

Wis.2d 235, 747 N.W.2d 528 (citing *Tri-State Mechanical, Inc. v. Northland College*, 2004 WI App 100, ¶ 13, 273 Wis. 2d 471, 681 N.W.2d 302). Quite clearly, here the circumstances are not inequitable. Here, the Stadlers received a very substantial benefit for the amount they paid: several years of life insurance coverage with a face amount of $7,500,000.00. They may not ultimately have used that coverage (by virtue of their fortune of surviving through that period), but "[h]aving agreed to the specific terms of a contract, a party cannot seek to improve its position by appealing to equity when, as a result of subsequent events, it appears that the other party to the agreement benefitted more" than expected. *Kay Beer Distrib., Inc. v. Energy Brands, Inc.*, No. 07-CV-1068, 2009 WL 425821 (E.D. Wis. Feb. 20, 2009), *modified on other grounds on reconsideration by* 2009 WL 3170943 (E.D. Wis. Sept. 29, 2009), *aff'd*, 408 Fed. App'x 996 (7th Cir. 2011). Which brings the Court to its next point: as it discussed above, the Stadlers entered into a contract with John Hancock which expressly included terms regarding required premiums that they now seek to rescind; however, if the Stadlers had the misfortune of dying in the period in question, John Hancock would undoubtedly have been required to pay the entire $7,500,000.00 face amount of the policy. John Hancock, in good faith, provided several years of coverage to the Stadlers for which John Hancock took on substantial risk and received a benefit of approximately $200,000.00. Seeing as the Stadlers are at fault for not timely rejecting the contract after they had an ample opportunity to read, the Court finds that there is no possible circumstance under which it would be inequitable for John Hancock to retain the premiums paid. *See NII-JII Entertainment, LLC v. Troha*, 2007 WI App 183 ¶ 19 n. 13, 304 Wis. 2d 634, 736 N.W.2d 542 ("We

observe that inasmuch as the mismanagement of NII-JII and NII-JII's own conduct precipitated its losses, a viable claim for unjust enrichment does not exist.") (citing *David Adler & Sons Co. v. Maglio,* 200 Wis. 153, 159-60, 228 N.W. 123 (1929)).

Therefore, the Court will grant John Hancock's motion to dismiss this portion of the Stadlers' complaint, as is appropriate under Wisconsin law. *See, e.g., Bartelt v. Rosen Nissan, Inc.*, 2008 WI App 172, 314 Wis. 2d 746, 760 N.W.2d 184 (affirming trial court's dismissal at motion to dismiss stage where the third element of an unjust enrichment claim was the "crux" of the case); *NII-JII,* 2007 WI App 183 (also affirming trial court's dismissal of unjust enrichment claim at motion to dismiss stage).

### 2.4 Remaining Issues

The parties have also briefed the issues of agency and standing. On the agency issue, John Hancock argues that the Stadlers have not sufficiently pled the requirements of agency. (Docket #4, at 11–12). That may well be true, but it is ultimately inconsequential, as the Court dismisses all the claims against John Hancock on their merits and need not address whether the Stadlers have pled facts that would be sufficient to show that John Hancock may be held liable for Stadelmann's actions.

On the standing issue, John Hancock argues that the Stadlers lack standing to bring this suit because they are neither beneficiaries of the policy (their grandchildren's trust is) nor the trustees of the beneficiary trust. (Docket #4, at 12–13). Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III," and requires that the plaintiff allege: (1) that he has suffered an injury in fact; (2) that the injury is fairly

Page 17 of 19

Case 2:13-cv-00679-JPS   Filed 10/28/13   Page 17 of 19   Document 19

traceable to the action of the defendant; and (3) that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, John Hancock's argument rests primarily on whether the Stadlers have suffered the required injury in fact. That is, John Hancock argues that, because the Stadlers are neither signatories to the policy nor beneficiaries of the trust, they cannot be said to have alleged an injury in fact. The Court disagrees. The Stadlers allege that they were duped, through erroneous representations regarding the price of premiums, into purchasing a life insurance policy that would benefit their grandchildren. Had they not chosen to purchase the policy in question, they could arguably have invested their money in a separate policy on terms that would have been more favorable to them. Instead, they have forfeited the policy and the premiums they paid with little benefit to show for it and also lost the ability to invest their money in a different policy. While the Court notes that it has ultimately found that the Stadlers are not legally entitled to relief for that injury in fact, it nonetheless finds that the Stadlers adequately alleged an injury in fact such that they have standing.

3. CONCLUSION

With these additional matters disposed of, the Court notes that it has determined, on the merits, that dismissal of all of the Stadlers' claims is appropriate. Therefore, for all of the above-described reasons, the Court is obliged to grant John Hancock's motion to dismiss in full.

Accordingly,

IT IS ORDERED that the defendant's motion to dismiss (Docket #3) be and the same is hereby GRANTED and this action be and the same is hereby DISMISSED with prejudice.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of October, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge